We therefore affirm the judgment of the district court.

**Ray C. HAGEMAN, Plaintiff/Appellant,**

v.

**PHILIPS ROXANE LABORATORIES, INC., an Ohio Corporation, Defendant/Appellee.**

No. 78–1914.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 6, 1980.

Decided July 28, 1980.

Walter Cochran-Bond, Los Angeles, Cal., for plaintiff/appellant.

Stephen P. Pepe, O'Melveny & Myers, Los Angeles, Cal., for defendant/appellee.

Before WALLACE and TANG, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

This private suit under the Age Discrimination in Employment Act of 1967 (ADEA or the Act), 29 U.S.C. § 621 *et seq.* (1976), was dismissed [1] for want of prior filing with the Secretary of Labor of the notice of intent to sue formerly required by section 7(d) of the Act, 29 U.S.C. § 626(d).[2] The question before us is whether under the circumstances of the case the notice of intent to sue requirement should be either deemed satisfied or waived. We conclude that it should not, and affirm the judgment of the district court.

## I.

The case for permitting the plaintiff/appellant (Hageman) to maintain the action is based on the following facts. He was fired from his job on September 3, 1975. Only 26 days later, on September 29, 1975, he lodged a complaint with the Department of Labor (DOL) by filling out an "Employment Information Form," checking the box on that form that indicated that he believed he had been discriminated against because of his age, and attaching a three-page typewritten explanation of the events leading up to and surrounding his discharge. On October 28, 1975, he was interviewed by telephone by a DOL investigator; he then gave further information about the basis of his complaint. On October 30, 1975, the DOL notified him by letter that it would investigate the complaint as soon as possible. Such an investigation was carried out, and we may assume that during the course of it the defendant/appellee (Philips Roxane) became aware of Hageman's complaint to the DOL. On March 29, 1976, less than seven months after he was fired, Hageman received a letter from the DOL saying that the investigation had "revealed that you were released from your employment with this firm for reasons other than age," that the DOL could take no further action, but that this did not affect his individual right to sue. This suit was filed on August 31, 1977, within the two-year limitations period provided by § 7(e) of the ADEA, after Hageman had submitted some new information to the DOL upon which it refused to act. Citing *Love v. Pullman Co.,* 404 U.S.

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. Defendant's motion to dismiss or for summary judgment was treated as a motion for summary judgment. The district court had before it copies of all the letters and other documents referred to in this opinion, including the transcript of plaintiff's deposition. A hearing on the motion was held on February 6, 1978, both parties appearing by their counsel. The district court found that "Plaintiff has never filed an intent to sue letter with the Secretary of Labor despite having knowledge of the requirement that he do so," and concluded that it therefore lacked subject matter jurisdiction over plaintiff's ADEA cause of action.

2. Section 7(d) formerly provided in pertinent part that:

(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary [of Labor] not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, . . . .

Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

Section 4(b)(1) of the Age Discrimination in Employment Act Amendments of 1978, Pub.L. 95–256, 92 Stat. 189 (Apr. 6, 1978), amended § 7(d) by substituting the requirement that a *charge* alleging unlawful discrimination be filed with the Secretary, for the old requirement that a notice of intent to sue be filed. Mutatis mutandis, the last sentence of § 7(d) remains the same. Section 4(b)(2) of Pub.L. 95–256 provides that: "The amendment made by paragraph (1) of this subsection shall take effect with respect to civil actions brought after the date of enactment of this Act [Apr. 6, 1978]." This action was brought on August 31, 1977.

522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) and similar cases, Hageman argues that his filing with the DOL of the Employment Information Form should be considered to have satisfied the notice of intent to sue requirement of § 7(d), and that even if it is not so considered, the notice of intent to sue requirement should be waived in this case because the requirement is a mere procedural technicality whose purpose was fully satisfied by the filing of the Employment Information Form and subsequent events.

The case against permitting Hageman to maintain the action is based on essentially two facts. First, at no time prior to filing suit did Hageman literally comply with the notice requirement of § 7(d) by filing with the DOL any notice of his intention to commence this action. In particular, the Employment Information Form that he filed on September 29, 1975 itself provided no place at which such intention should be indicated, and nothing Hageman wrote on the form or in his three-page attachment can be construed as an indication to the DOL that he intended to sue Philips Roxane under the ADEA. Second, Hageman has known from the very early stages of this whole affair of the notice of intent to sue requirement of § 7(d) and of his failure to have satisfied it. Thus, in the letter that he received from the DOL on October 30, 1975, less than two months after he was fired and one month after he had filed his complaint, the DOL not only notified him that it would investigate the complaint, but it also enclosed a pamphlet that both summarized and contained the text of the ADEA. The letter specifically pointed out that:

> As you well note on page 4 [of the pamphlet], there are certain requirements with specific time limits governing the circumstances under which an employee may file his own suit under this Act.

The text of § 7(d) begins at the bottom of page 4 of the pamphlet and continues on page 5. Hageman admitted during his deposition that he received and read both the letter and the pamphlet. He was thus clearly on notice, within approximately two months of his discharge, of both the notice of intent to sue requirement and the time limit within which he would have to file such notice if he wished to bring his own suit against Philips Roxane. Although counsel for Hageman suggested at oral argument that Hageman could have thought after receiving the letter of October 30 that the complaint he had filed on September 29 satisfied the notice of intent to sue requirement, there is no indication in the summary judgment record that he did think this. Again, on January 6, 1976, only a little over four months after he was fired, the DOL sent Hageman another letter whose substance was that an investigation had been scheduled but would be delayed, and that:

> In view of this delay and to avoid any misunderstanding, your attention is again called to page 4 of the enclosed pamphlet. As you will note there are certain requirements with specific time limits governing the circumstances under which an employee may file his own suit. *The fact that you submitted information concerning an alleged unlawful practice has not been considered a notice to the Secretary of Labor of intent to file suit.* [Emphasis added.]

Although Hageman did not at the time of his deposition (December 1977) recall receiving this letter, he did recall the letter of March 29, 1976, informing him that no ADEA violation had been found and that the DOL would take no further action. Again the ADEA pamphlet was enclosed, and again the letter concluded with the following language, of which Hageman admits he took notice:

> The Department of Labor can take no further action with respect to this matter. This does not affect your individual rights, as explained on page 4 of the enclosed pamphlet. As you will note, there are certain requirements with specific time periods governing the circumstances under which an individual can file his own suit under this Act. *The fact*

*that you submitted information concerning an alleged unlawful practice has not been considered a notice to the Secretary of Labor of intent to file suit. We do not, of course, encourage or discourage such suits. The decision is entirely up to you. [Emphasis added.]*

Although the letter of March 29 was sent more than 180 days after Hageman was fired, if does not appear that this is the reason he did not then give notice of his intent to sue and file suit. Rather, he apparently simply intended to let the matter drop:

> The information I got from the Department of Labor was that they'd investigated and found no violation, and that I had the opportunity to seek counsel, a lawyer and so on, and at that time I didn't pursue it any further.
>
> They sent me a letter to this effect, and then I found out later on reasons why I should go ahead and pursue.

Hageman deposition at 81. As noted, this suit was filed more than a year later, on August 31, 1977; and at no time prior to filing suit did Hageman notify the DOL of his intention to do so.

## II.

As we see it, this case is controlled by the fact that Hageman was so early and so well informed of the notice of intent to sue requirement of § 7(d) and of his failure to have satisfied it. We could not permit Hageman to maintain the action, on these facts, without doing less than substituting wholesale a "complaint" or "charge" requirement for the notice of intent to sue requirement of § 7(d), as Congress itself did, prospectively only, in 1978 (*see* n.2 *supra* ). This we refuse to do.

## A.

■ Many of the cases relied on by Hageman articulate and apply the principle that because proceedings under the ADEA and certain similar statutes are initiated by laymen unschooled in the law and unassisted by trained lawyers, the courts should resolve any procedural ambiguities found in such statutes in favor of complaining parties, and should in the construction of the statutes particularly avoid the multiplication of procedural shibboleths. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979); *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Bean v. Crocker Nat. Bank*, 600 F.2d 754 (9th Cir.1979); *Ramirez v. Nat. Distillers & Chemical Corp.*, 586 F.2d 1315 (9th Cir.1978); *Moses v. Falstaff Brewing Co.*, 525 F.2d 92 (8th Cir.1975); *EEOC v. Wah Chang Albany Corp.*, 499 F.2d 187 (9th Cir.1974); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). We of course accept this principle.

In this case, however, there can be no question of an ambiguity in § 7(d) that we might resolve in favor of Hageman. The notice of intent to sue requirement, of which Hageman was aware by October 30, 1975, is unambiguous on its face:

> [t]o hold that a complaint to the Labor Department of an alleged discriminatory employment practice complies with the requirement even though the complaint never mentions an intent to file a private civil action under the ADEA, would be in complete disregard of the language of the Act.

*Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1259 (10th Cir.1976), *aff'd* by an equally divided court, 431 U.S. 936, 97 S.Ct. 2646, 53 L.Ed.2d 253 (1977). *Accord, Newcomer v. International Business Machines Corp.*, 598 F.2d 968, 969 (5th Cir.), *cert. denied*, 444 U.S. 984, 100 S.Ct. 491, 62 L.Ed.2d 413 (1979); *Charlier v. S. C. Johnson & Son, Inc.*, 556 F.2d 761, 765 (5th Cir.1977); *Hiscott v. General Electric Co.*, 521 F.2d 632, 634 (6th Cir.1975); *Powell v. Southwestern Bell Telephone Co.*, 494 F.2d 485, 489 (5th Cir.1974). We disagree with the contrary holding in *Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911 (N.D.Ga.1973), on which

Hageman principally relies.[3] Moreover, there is no evidence that Hageman found the notice of intent to sue requirement ambiguous or that he believed that the complaint he filed complied with it; and even if it were not so, any ambiguity Hageman may have perceived must have been cleared up at least as early as March 29, 1976 and possibly earlier, when he was informed that his complaint did not satisfy the notice requirement of the statute. Unnecessary procedural technicality though the notice of intent to sue requirement may appear in this case to be, it is a requirement clearly imposed by Congress, which Hageman did not satisfy even after he had unambiguous notice of it.

### B.

◼ The fact remains that Hageman's filing of his complaint with the DOL did unquestionably serve many of the purposes the notice of intent to sue requirement was intended to serve: the DOL and Philips Roxane were given timely notice of the complaint, and the DOL carried out a prompt investigation. We next consider whether this fact justifies waiving the notice of intent to sue requirement as to Hageman in this case.

This Court has never decided the question whether strict compliance with the procedural requirements of § 7(d) (once ambiguities have been resolved) is an absolute jurisdiction prerequisite to suit under the Act, or whether those requirements are subject to equitable modification by the courts in proper cases. On this point *see Nielsen v. Western Elect. Co., Inc.*, 603 F.2d 741 (8th Cir.1979); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir.1978); *Reich v. Dow Badische Co.*, 575 F.2d 363 (2nd Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3rd Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Charlier v. S. C.*

*Johnson & Son, Inc., supra*; *Dartt v. Shell Oil Co., supra*. Cf. *Reeb v. Economic Opportunity Atlanta Inc.*, 516 F.2d 924 (5th Cir.1975) (discussing whether equitable modification of the procedural requirements of Title VII of the Civil Rights Act of 1964 is permissible). Assuming, without deciding, that the requirements of § 7(d) are subject to equitable modification, we conclude that Hageman has not made the sort of equitable showing that would permit us to waive the notice of intent to sue requirement as to him.

We point out to begin with that no other Court of Appeals has permitted complete waiver of the notice of intent to sue requirement. Those Circuits that have permitted equitable modification of the requirements of § 7(d) have limited themselves to extending in some cases the 180-day period during which the statute requires prospective plaintiffs to file their notices of intent to sue with the DOL. *See* the cases cited in the preceding paragraph. The central consideration in those cases has uniformly been what the plaintiff knew and when he knew it: no Circuit has tolled the 180-day limitation on behalf of a plaintiff who, within the 180-day period, knew or should have known of the ADEA violation he later alleges and of his rights and responsibilities under the Act. A second consideration has been whether any prejudice to the defendant because of the plaintiff's delay was apparent to the court. Finally, no Circuit has permitted "equitable modification" of the requirements of § 7(d) *simply* because, within the 180-day period, the DOL and the defendant became aware of the plaintiff's complaint and the DOL subsequently investigated the complaint. To permit modification of the requirements of the statute on this ground alone would, as we have suggested, amount simply to the substitution by the courts of a "complaint" or "charge" requirement for the notice of intent to sue requirement enacted by Con-

---

**3.** We note that *Woodford* has been disapproved, by implication at least, in the Circuit in which it was decided. *See Newcomer v. International Business Machine Corp., supra.*

gress, rather than the equitable modification of the statute on a case-by-case basis, depending on the equities in each case. No Circuit has gone this far.[4]

None of the considerations we have just mentioned favors Hageman. In particular, we see no reason for exercising our equitable powers under the ADEA, if any there be to exercise in this case, on his behalf. The chief stumbling block once again is Hageman's early knowledge of the notice of intent to sue requirement and of his failure to have satisfied it. Fully aware as he was of what he was required to do to preserve his private right of action, Hageman can make no claim on this Court's conscience for himself in particular. Furthermore, we are not convinced that, as Hageman suggests, Philips Roxane would not be prejudiced if we permitted Hageman to maintain this action despite his failure to comply with the requirements of § 7(d). Philips Roxane was entitled to rely on the protections and repose afforded it under § 7 (d) as Congress wrote the statute; there would be prejudice in allowing that repose to be unsettled simply because Hageman decided, over a year after Philips Roxane justifiably believed the case was closed, that he wanted to file his own action after all.

The judgment of the district court is AFFIRMED.

TANG, Circuit Judge, dissenting.

I respectfully dissent.

Although no circuit court to date has so held, several district courts have found complaints similar to that made by Mr. Hageman to the Department of Labor (D.O.L.) sufficient to satisfy the "intent to sue" notice requirement. For instance, in *Langman v. Western Electric Co.*, 488 F.Supp. 680 (S.D.N.Y.1980), the district court for the Southern District of New York held:

> "While the complaints filed with the Secretary were not in fact captioned, 'notice of intent to sue,' we must agree with Judge Dooling's statement that 'the filing of a notice of intention to sue is not required as an incantatory formality but for the definite practical purpose of inducing the Secretary to initiate conciliation and to alert him that he should consider whether to sue before the grievant himself sues.' *Cowlishaw v. Armstrong Rubber Co.*, (E.D.N.Y.1977), 15 FEP Cases 1108."

*Accord Woodford v. Kinney Shoe Corp.*, 269 F.Supp. 911 (N.D.Ga.1973); *Burgett v. Cudahy Co.*, 361 F.Supp. 617 (D.Kan.1973).

Other circuits have disagreed with such an approach and have adopted a more formalistic interpretation of the ADEA "intent to sue" notice requirement. However, in an analogous area of Title VII law, this court construed a filing requirement in a more pragmatic manner. *See Saulsbury v. Wismer & Becker, Inc.*, No. 77–2855 (9th Cir. 1980). In Title VII, as in the ADEA, if there is a state agency, a complainant has a longer period in which to file his complaint. In Title VII, the longer period is triggered if the complainant "initially institute[s] proceedings" with the state agency. 42 U.S.C. § 2000e–5(e). In

---

4. In *Dartt v. Shell Oil Co., supra*, the facts that Dartt had filed a complaint with the DOL within 180 days and that the complaint had been promptly investigated and conciliation attempted by the DOL, were both considered to be relevant to the question whether the 180-day limitation should be tolled. However, the evidence in that case was *also* that when Dartt first complained to the DOL she was not informed of her rights and responsibilities under § 7 of the ADEA. She was in fact not informed of them, despite her frequent calls to check on progress in her case, until the 180-day period had run, when the DOL finally sent her its pamphlet. This pamphlet and the letter accompanying it constituted her first actual notice of her right to bring a private action and the 180-day notice requirement. Immediately after she received this notice she retained private counsei who promptly filed her notice of intent to sue with the DOL, only 36 days beyond the 180-day period. The contrast with the facts of this case could not be more apparent. Moreover, as we have noted, the court in *Dartt* specifically held that Dartt's filing of her complaint did not constitute the required notice of intent to sue.

*Saulsbury*, the complainant was in contact with the proper state agency, but had not filed a formal complaint with the state. This court held that Saulsbury's contacts did initially institute state proceedings even though the formal complaint, with its technical requirements, was not filed. *Id.* at ———. In so holding, this court analyzed the character of Saulsbury's contacts, and compared them with the needs and purposes to be served by the "initially instituted" requirement. *Id.* at ——— – ———.

In the instant case, Mr. Hageman filed an Employment Information Form with the D.O.L., along with a typewritten statement of his age discrimination complaint. In these filings, he provided the D.O.L. with data regarding Philips Roxane Laboratories and his employment history there, as well as a detailed account of the events leading to his discharge. This complaint fully satisfied the purposes behind the "intent to sue" notice requirement. The majority's opinion itself refers to its literal interpretation of the requirement as an "unnecessary procedural technicality . . . in this case."

No substantial goal of the ADEA is furthered by the majority's decision here, nor does there appear any reason to divert from our policy of liberally interpreting remedial legislation. The information supplied by Mr. Hageman should be sufficient to fully satisfy the ADEA's notice of "intent to sue" requirement. To require anything more, elevates form over substance in an area already beset by confusing and intricate proof and procedural requirements.