**CAPITAL TRACING, INC.,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 92–55885.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 31, 1994.

Decided Aug. 17, 1995.

Arnold I. Weber, San Francisco, CA, for plaintiff-appellant.

Kevin M. Brown, Tax Div., Dept. of Justice, Washington, DC, for defendant-appellee.

Before: NELSON, REINHARDT, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

On January 6, 1992, Plaintiff/Appellant Capital Tracing, Inc. ("Capital") filed a wrongful levy action against the United States under 26 U.S.C. § 7426[1] based on the Internal Revenue Service's ("IRS") notice of levy filed on August 22, 1985. The district court dismissed the action on May 8, 1992, for lack of subject matter jurisdiction, finding that the time for filing a wrongful levy action under § 7426 had expired on May 22, 1986, nine months after the IRS served its notice of levy. Capital appealed the district court's decision.

1. Section 7426 states in pertinent part:
   (a) Actions permitted.—
      (1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, and any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.
   26 U.S.C. § 7426(a)(1) (1988). All statutory references hereafter are to 26 U.S.C. (1988) unless otherwise indicated.

Capital contends that the district court erroneously granted the government's motion to dismiss, arguing that the limitations period did not commence until we issued our 1991 ruling in *United States v. Badger*, 930 F.2d 754 (9th Cir.1991) (*Badger II* ). It is unnecessary for us to decide the disputed issue of when the limitations period began to run, as determined by the "date of the levy" on the cash bond. We assume, without deciding, that the IRS' notice of levy served upon the clerk of the district court on August 22, 1985, triggered the limitations period. As a result, Capital's wrongful levy action, filed on January 6, 1992, after the expiration of the limitations period, was untimely. However, we find that equitable factors tolled the limitations period from the date of the notice of levy until we decided *Badger II* on April 16, 1991. Because Capital filed its wrongful levy action within nine months of our 1991 decision in *Badger II*, this action is not time-barred. We therefore reverse and remand.

## FACTS AND PROCEEDINGS

On or before July 13, 1982, the IRS assessed $180,582.48 in income taxes against John James Badger ("Badger"). Badger was indicted on six fraud-related offenses in July 1985 and was ordered to post a $100,000 cash bond. Capital alleges that on July 29, 1985, it posted the bond with approximately $73,-000 of its own funds and approximately $27,-000 loaned to Badger by other people or entities for the purpose of posting bond.

On August 22, 1985, the IRS served a notice of levy upon the Clerk of the District Court for the Central District of California. The notice of levy stated that "[t]he intent and purpose of this levy is to attach to the $100,000 cash bond" posted for Badger.

Badger was found guilty, and we affirmed his conviction in *United States v. Badger*, 849 F.2d 1476, 1988 WL 63746 (9th Cir.) (*Badger I* ), *cert. denied*, 488 U.S. 891, 109 S.Ct. 225,

102 L.Ed.2d 215 (1988). Badger surrendered himself for incarceration, and thereafter the district court ordered that the cash bond be exonerated. Upon being apprised of the IRS' notice of levy, the district court ordered the IRS to show cause why the $100,000 cash bond should not be exonerated and paid over to Capital. The district court held a hearing on the show cause order and, on May 11, 1989, ordered that the $100,000 be paid over to Capital on May 18, 1989. The district court held that Internal Revenue Code ("I.R.C.") § 6331 does not allow the IRS to levy upon bail bonds.

On April 16, 1991, we reversed the district court order and remanded for the district court to comply with the IRS' notice of levy. *Badger II*, 930 F.2d 754, 755. We stated that:

I.R.C. § 6331 provides for a lien on "all property and rights to property" belonging to the delinquent taxpayer. There is no exception for bail bonds. Moreover, there is no requirement that the IRS prove that any portion of property being levied upon belongs to the delinquent taxpayer before it can levy on the property. Under I.R.C. § 7421(a), the Anti–Injunction Act [footnote omitted], if any person wishes to contest the levy, that person must bring a wrongful levy action under I.R.C. § 7426 or other provisions specified in the Anti–Injunction Act. These I.R.C. sections indicate that the district court was required to honor the IRS's levy without inquiring into its validity or determining how much of the bail bond belongs to Badger.

*Id.* at 756.

On June 25, 1991, the district court on remand directed payment of the $100,000 to the IRS; payment was made on June 27, 1991. On January 6, 1992, Capital filed a complaint in the district court under § 7426 alleging that the IRS had "wrongfully levied on the [bail bond]." [2]

---

**2.** On August 22, 1991, Capital filed with the IRS an administrative claim for the return of the $100,000 to Capital. Under § 6532(c)(2), an administrative filing can extend the limitations period in which a party must file its wrongful levy action under § 7426. A party must file an administrative claim within nine months of the date

of levy to extend the limitations period. *Williams v. United States*, 947 F.2d 37, 40 (2d Cir.1991), *cert. denied*, 504 U.S. 942, 112 S.Ct. 2277, 119 L.Ed.2d 203 (1992); *United Sand & Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 736 (5th Cir.1980). Thus, because we assume without deciding that the notice of levy on

On March 11, 1992, the government moved to dismiss Capital's complaint for lack of subject matter jurisdiction. Specifically, the government contended that Capital's wrongful levy action was untimely under § 6532(c), because it was not brought within nine months after the IRS' August 22, 1985, service of notice of levy on the bail bond. As a result, the government argued that the district court lacked subject matter jurisdiction over the case.

Following a hearing, the district court entered an order on May 8, 1992, dismissing Capital's complaint for lack of subject matter jurisdiction. The district court denied Capital's motion for reconsideration and vacation of its May 8, 1992 order. Capital filed a timely appeal from the district court's order.

## STANDARD OF REVIEW

█ The district court's order dismissing Capital's complaint on the ground that statutory limitations bar the action involves questions of law which we review de novo. *Washington v. Garrett*, 10 F.3d 1421, 1429 (9th Cir.1993).

## DISCUSSION

### I.

█ The United States, as a sovereign, may be sued only with its consent, *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976), and waivers of sovereign immunity are to be strictly construed. *United States v. Michel*, 282 U.S. 656, 660, 51 S.Ct. 284, 285–86, 75 L.Ed. 598 (1931); *Dieckmann v. United States*, 550

F.2d 622, 624 (10th Cir.1977). However, once the government has waived its sovereign immunity, the doctrine of equitable tolling may apply to toll the statutory limitation. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990).[3]

### II.

█ We assume, without deciding, that the IRS' service of the notice of levy on the clerk of the district court on August 22, 1985, triggered the limitations period which, unless equitably tolled, would have required Capital to bring its wrongful levy action on or before May 22, 1986, to avoid summary judgment.

In *Williams–Scaife v. Department of Defense Dependent Sch.*, 925 F.2d 346, 347 (9th Cir.1991), we applied the Supreme Court's decision in *Irwin* and stated that "equitable tolling is applicable in employment discrimination cases filed by federal employees [against the government.]" The *Irwin* decision overruled a long line of Ninth Circuit cases [4] which refused to apply equitable tolling in cases against the government. In *Irwin*, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. at 95–96, 111 S.Ct. at 457. The Court noted that federal courts have allowed equitable tolling in situations where the claimant diligently sought judicial relief by filing a defective pleading during the statutory period or where the complainant had been induced by his adversary to allow the filing deadline to pass. *Id.* at 96, 111 S.Ct. at 457–58.

---

August 22, 1985, triggered the limitations period, Capital's filing of an administrative claim more than nine months later would not permit Capital to take advantage of the § 6532(c)(2) extension. In addition, based upon our holding with respect to equitable tolling, further consideration of § 6532(c)(2) is unnecessary.

3. The district court construed the statute of limitations as a jurisdictional requirement. As we stated in *Washington*, 10 F.3d at 1437, however, the *Irwin* Court "held that federal statutory time limitations on suits against the government are not jurisdictional in nature." *See also Fadem v. United States*, 52 F.3d 202, 206 (9th Cir.1995). We thus treat the district court's action as a

dismissal for failure to state a claim, rather than as a dismissal for lack of subject matter jurisdiction.

4. *Johnston v. Horne*, 875 F.2d 1415 (9th Cir. 1989); *Lubniewski v. Lehman*, 891 F.2d 216 (9th Cir.1989); *Hymen v. Merit Sys. Protection Bd.*, 799 F.2d 1421 (9th Cir.1986), *cert. denied* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987); *Koucky v. Department of Navy*, 820 F.2d 300 (9th Cir.1987); *Lofton v. Heckler*, 781 F.2d 1390 (9th Cir.1986); *Cooper v. United States Postal Serv.*, 740 F.2d 714 (9th Cir.1984) *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985).

There are other situations in which the courts have indicated that it may be proper for courts to exercise their equitable powers. In *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564 (Fed.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993), the court stated that even where there is no applicable express tolling provision, "courts may when circumstances require invoke the concept of tolling as an equitable matter.... A court in an appropriate case may temper the application of the bar in exercise of its equitable powers." *Id.* at 1571 & n. 10.

In *Dempsey v. Pacific Bell Co.*, 789 F.2d 1451 (9th Cir.1986), in determining whether statutory limitations may be equitably tolled, we directed the district court to consider such factors as the lack of clear precedent in the circuit regarding the issue, and the absence of prejudice to the defendant. *Id.* at 1453 (the "lack of clear precedent in this circuit regarding the jurisdictional requirements pertaining to" plaintiff's age discrimination claim against a private employer may serve as an equitable factor justifying tolling of the statute of limitations); *see also Vance v. Whirlpool Corp.*, 707 F.2d 483, 489–90 (4th Cir.1983) (plaintiff permitted to refile his complaint because there was no clear precedent on the issue and there was no demonstration of prejudice to defendant; statute of limitations effectively tolled), *supp. op.*, 716 F.2d 1010 (4th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 & 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984). Because of *Irwin*, we can now apply the *Dempsey* factors in cases against the government.

The history of the instant case illustrates the lack of clarity in the law that would justify a court's equitable tolling of a limitations period. At the exoneration proceeding in 1989, the district court ruled against the IRS and ordered that the bond proceeds be paid over to Capital. In 1991, we overturned that decision and remanded for the district court to comply with the IRS' notice of levy.

We said that "if any person wishes to contest the levy, that person must bring a wrongful levy action under I.R.C. § 7426.... [The Anti–Injunction Act] indicate[s] that the district court was required to honor the IRS levy without inquiring into its validity...." *Badger II,* 930 F.2d at 756. At issue in *Badger II* was "whether the power to rule on the validity of the IRS' levy 'can fairly be implied as necessarily ancillary to the exoneration of the bond.'" *Id.* (quoting *United States v. Arnaiz,* 842 F.2d 217, 220 (9th Cir.1988)). In *Arnaiz,* we held that a district court had jurisdiction ancillary to its power to exonerate a bail bond to consider disputes related to the bond if "denial of jurisdiction would necessarily interfere with the district court's ability to carry out its statutory mandate [to exonerate the bond]." *Id.* at 220–21. In *Arnaiz,* the defendant posted collateral with the surety and therefore became an "obligor" under Rule 46(f).[5] We held that the district court needed jurisdiction to decide whether the surety was required to return collateral to the defendant, because, without jurisdiction, it could not determine which obligor was entitled to receive the proceeds of the bail bond.

In contrast, in *Badger II* we held that the district court did not need to conduct a hearing to determine who owned the bond, because "there is no requirement that the IRS prove what portion of the property being levied upon belongs to the delinquent taxpayer before it can levy on the property." *Badger II,* 930 F.2d at 757. We said that Capital's only recourse lay in a wrongful levy action under § 7426. *Id.*

In *United States v. Rubenstein,* 971 F.2d 288 (9th Cir.1992), we followed *Arnaiz,* stating that "[t]he district court thus had jurisdiction to consider Sherman's motion because it was 'necessarily ancillary' to release of the bail funds." *Id.* at 293. We distinguished *Badger II,* stating that there "we ruled on a 'narrow jurisdictional issue' and held that under the Anti–Injunction Act the district

---

5. Rule 46(f) provides:
   (f) Exoneration. When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the *obligors* and release any bail. A surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody. Fed.R.Crim.P. 46(f) (emphasis added).

court lacked power to settle a dispute as to who owned the bail funds when one claim took the form of an IRS levy." *Id.* at 293 n. 4.

A unique situation arose in *Badger II,* and we set forth new law. In other situations, both before and after *Badger II,* we have stated that district courts have jurisdiction to determine the rightful owner of bail funds. Capital's failure to know that the only way it could reclaim its bail bond was by filing a wrongful levy action was not due to its lack of diligence. The law was unclear, and we cannot say that Capital chose an unreasonable course of action by waiting until the exoneration proceeding to assert its ownership rights over the bond. Capital exercised its rights at what it thought was the earliest opportunity; Capital commenced actively protecting its interest in 1989 when, at the time of exoneration of the bail bond, it was apprised of the IRS' notice of levy on the bond. Capital was a major participant, as real party in interest, in the United States' appeal to our court from the district court's determination that the bond should be returned to Capital.

The lack of clarity in our circuit's law on the district court's jurisdiction to determine ownership of bail funds and the absence of demonstrated prejudice to the government justifies equitable tolling of the limitations period from the date of the levy until April 16, 1991, the date we issued our opinion in *Badger II.* Since Capital filed its wrongful levy action on January 6, 1992, within nine months of our decision, we hold that this action is not time-barred.

Accordingly, we reverse the order granting the government's motion to dismiss and remand to the district court to consider the merits of the case.

REVERSED AND REMANDED.