# United States Tax Court

164 T.C. No. 7

BELAGIO FINE JEWELRY, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 35762-21.                              Filed April 15, 2025.

————————

R issued P a notice of employment tax determination under I.R.C. § 7436. P mailed his petition to the Court via FedEx Express Saver four days before the expiration of the 90-day deadline to file for redetermination. The petition arrived at the Court one day after the 90-day deadline expired. P's attorney represents that his staff mailed the petition via FedEx Express Saver, but he would have used FedEx Priority Overnight. We previously held that the 90-day deadline to file for redetermination was a nonjurisdictional claim processing rule. *See Belagio Fine Jewelry, Inc. v. Commissioner*, 162 T.C. 243, 250–60 (2024). We reserved judgment on the question of whether the deadline is subject to equitable tolling until the question was presented in the proper motion. *Id.* at 260.

R filed a motion to dismiss for failure to state a claim upon which relief can be granted, arguing that the 90-day deadline is not subject to equitable tolling and in the alternative, that equitable tolling is not warranted here. P objected to the motion on the ground that this motion was an improper attempt to relitigate our prior ruling.

*Held*: The 90-day deadline is subject to equitable tolling.

**Served 04/15/25**

> *Held, further*, the circumstances surrounding the late-filed petition do not warrant equitable tolling.

———————

*Howard W. Gordon*, for petitioner.

*Linda P. Azmon, Kimberly A. Daigle, Jeremy H. Fetter*, and *Lauren B. Epstein*, for respondent.

## OPINION

GREAVES, *Judge*: This case is before the Court on respondent's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted on the grounds that the petitioner filed the petition outside the time prescribed by section 7436 or section 7502.[1] Respondent argues that the 90-day deadline is not subject to equitable tolling, and in the alternative, the circumstances in this case do not warrant equitable tolling. Petitioner objected to this motion, arguing that the motion is an improper attempt to relitigate our prior denial of respondent's Motion to Dismiss for Lack of Jurisdiction, filed March 2, 2022, and supplemented September 14, 2023. We hold that the 90-day deadline for filing a petition for redetermination of employment status is subject to equitable tolling but that the circumstances of this case do not warrant equitable tolling. Therefore, we will grant respondent's motion.

### *Background*

The following facts are stated solely for purposes of deciding respondent's motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioner's principal place of business is in Florida.

Petitioner did not file quarterly employment tax returns during the years 2016 and 2017 (periods at issue). Following an audit, respondent issued a notice of employment tax determination under

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times.

section 7436, dated August 24, 2021, wherein respondent determined that petitioner had an employee during the periods at issue. Respondent determined deficiencies in employment tax, additions to tax for failure to timely file under section 6651(a)(1) and failure to timely pay under section 6651(a)(2), and penalties for failure to make deposit of taxes under section 6656. The notice stated that the last day to file a petition with this Court was November 22, 2021. Petitioner mailed a petition for redetermination of employment status to the Court via FedEx Express Saver on November 18, 2021. The petition arrived at the Court on November 23, 2021.

On March 2, 2022, respondent filed a Motion to Dismiss for Lack of Jurisdiction on the ground that the petition was filed after the 90-day deadline prescribed by section 7436. On June 25, 2024, we held that the 90-day deadline was a nonjurisdictional claim-processing rule and denied respondent's motion. *Belagio Fine Jewelry, Inc. v. Commissioner*, 162 T.C. 243, 250–260 (2024). We reserved judgment on whether the 90-day deadline is subject to equitable tolling until the issue was raised in the appropriate motion. *Id.* at 260.

On August 9, 2024, respondent filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted. Therein, respondent argued that the 90-day deadline is not subject to equitable tolling and in the alternative, that equitable tolling is not warranted under these circumstances. After an extension of time, petitioner filed an objection, arguing that respondent seeks to relitigate the question of whether petitioner's case may be dismissed for failure to timely file.[2]

*Discussion*

I.  *Redetermination of Worker Classification*

Subtitle C of the Code imposes employment taxes on employers based on the wages paid to employees. These taxes include those imposed by the Federal Insurance Contributions Act (FICA), §§ 3101–3128, the Federal Unemployment Tax Act (FUTA), §§ 3301–3311, and income tax withholding under section 3402. An employer must make periodic deposits of amounts withheld from employees' wages and the employer's share of FICA and FUTA taxes. *See* §§ 6302, 6157; Treas.

---

[2] Petitioner also attempts to rehash its previous argument that the petition was timely because it would have been delivered in time if petitioner had sent it by a designated private delivery service. We rejected this argument in *Belagio Fine Jewelry, Inc.*, 162 T.C. at 246–250.

Reg. §§ 31.6302-1, 31.6302(c)-3. These employment taxes apply only in the case of employees and do not apply to payments made to independent contractors. *See* §§ 3121(a), 3401(a).

To ensure employers comply with these tax obligations, the Internal Revenue Service (IRS) may audit an employer's return to determine the employment status of individuals performing services for the employer, the availability of section 530 relief,[3] and the amount of employment tax due. Section 7436(a) grants the Court jurisdiction to review such determinations:

> Sec. 7436(a). Creation of Remedy.—If, in connection with an audit of any person, there is an actual controversy involving a determination by the Secretary as part of an examination that—
>> (1) one or more individuals performing services for such person are employees of such person for purposes of subtitle C, or
>> (2) such person is not entitled to the treatment under subsection (a) of section 530 of the Revenue Act of 1978 with respect to such an individual,
> upon the filing of an appropriate pleading, the Tax Court may determine whether such a determination by the Secretary is correct and the proper amount of employment tax under such determination. Any such redetermination by the Tax Court shall have the force and effect of a decision of the Tax Court and shall be reviewable as such.

A taxpayer may petition this Court for review after the Commissioner either issues a notice of employment tax determination or makes a determination regarding a taxpayer's employment tax liability without the issuance of a notice. *See* § 7436(a); *SECC Corp. v. Commissioner*, 142 T.C. 225, 231–36 (2014).

---

[3] Section 530 of the Revenue Act of 1978 is a safe harbor provision which prevents the IRS from retroactively reclassifying "independent contractors" as employees if the following conditions are met: (1) the employer has consistently treated the workers at issue and similar situated workers as independent contractors, (2) the employer complied with the reporting requirements with respect to the worker at issue, and (3) the employer had a reasonable basis for its worker classification. *See* Revenue Act of 1978, Pub. L. No. 95-600, § 530, 92 Stat. 2763, 2885.

Section 7436(b) provides several limitations relevant to our redetermination of employment status, including that the employer filed the petition within 90 days if the IRS sent the notice by certified or registered mail (90-day deadline), and that no adverse inference may be drawn from the employer changing an employee's status during litigation.

Specifically, as to the 90-day deadline, section 7436(b)(2) provides:

> If the Secretary sends by certified or registered mail notice to the petitioner of a determination by the Secretary described in subsection (a), no proceeding may be initiated under this section with respect to such determination unless the pleading is filed before the 91st day after the date of such mailing.

II.  *Equitable Tolling*

Having decided the 90-day deadline for filing a petition for redetermination of employment status is not a jurisdictional bar, we must decide whether the deadline is subject to equitable tolling.[4]  *See Belagio Fine Jewelry, Inc.*, 162 T.C. at 250–60.  As noted in our prior opinion, this is a distinct analysis that we did not previously consider. *Id.* at 260; *see also Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497–501 (considering whether a deadline was jurisdictional and whether it was subject to equitable tolling in separate analyses).

Equitable tolling "effectively extends an otherwise discrete limitations period set by Congress." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014).  The doctrine "is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods." *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500.  Because Congress does not alter this feature lightly, nonjurisdictional deadlines are presumptively subject to equitable tolling. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95–96 (1990). This presumption can be rebutted if equitable tolling is not consistent with the text of the statute or the statutory scheme.  *Arellano v.*

---

[4] The Supreme Court has confirmed the availability of equitable tolling outside of Article III courts.  *See Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1500 n.1 (2022) (applying equitable tolling to a Tax Court deadline); *Young v. United States*, 535 U.S. 43, 47 (2002) (applying equitable tolling in a bankruptcy court).

*McDonough*, 143 S. Ct. 543, 548 (2023); *United States v. Beggerly*, 524 U.S. 38, 48 (1998).

The Supreme Court in *United States v. Brockamp*, 519 U.S. 347, 354 (1997), held that the period to file a refund lawsuit under section 6511 was not subject to equitable tolling. The Court found that the presumption in favor of equitable tolling had been rebutted. *Id.* at 354. The Court reasoned that section 6511 set forth the time limit in "unusually emphatic form" and in a "highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* at 350. The statute reiterated the deadline multiple times in both procedural and substantive terms. *Id.* at 350–51. These substantive terms affected the taxpayers' refund amounts according to their compliance with the deadline. *Id.* at 351. The statute also included six highly detailed exceptions based on the underlying subject matter, which did not include equitable tolling. *Id.* at 351–52 (discussing the specific deadline extensions related to operating losses, § 6511(d)(2); credit carryback, § 6511(d)(4); foreign taxes, § 6511(d)(3); self-employment taxes, § 6511(d)(5); worthless securities, § 6511(d)(1); and bad debt, § 6511(d)(1)). Finally, the Court explained that permitting equitable tolling of the deadline would create "serious administrative problems" due to the over 90 million refunds the Department of the Treasury processes each year. *Id.* at 352.

In contrast, in *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501, the Supreme Court held that the deadline to petition the Tax Court for review of a collection due process case in section 6330 was subject to equitable tolling. The Supreme Court reasoned that nothing in the text of section 6330 expressly prohibited equitable tolling and the short 30-day deadline was directed to the taxpayer rather than the court. *Id.* at 1500. The deadline is also in a Code section that is "'unusually protective' of taxpayers" and the litigation is often initiated by pro se litigants. *Id.* (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 160 (2013)). Further, section 6330 has only one enumerated exception related to suspending the time to file a petition in the event of bankruptcy. *Id.* at 1501. This one exception, as compared to the six exceptions in *Brockamp*, did not prevent the Supreme Court from reading an additional exception for equitable tolling into the statutory scheme. *Id.* Finally, the Supreme Court concluded that equitable tolling would not add a significant administrative burden because of the low number of petitions filed with the Tax Court annually under section 6330. *Id.*

As for the deadline in section 7436(b)(2), we see nothing in the statute's text to rebut the presumption that equitable tolling applies. Section 7436 does not expressly prohibit equitable tolling. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500. Nor does the wording strike us as "unusually emphatic," "highly detailed," or "technical." *See Brockamp*, 519 U.S. at 350. Although section 7436 uses emphatic wording—"no proceeding may be initiated"—it does not strike us as *unusually* emphatic. It seems no more emphatic than the wording of the Federal Tort Claims Act, 28 U.S.C. § 2401(b), which provides that a claim "shall be forever barred" for failure to comply with the 6-month deadline that the Supreme Court held did not preclude equitable tolling. *See United States v. Wong*, 575 U.S. 402, 420 (2015); s*ee also Volpicelli v. United States*, 777 F.3d 1042, 1046 (9th Cir. 2015) (reasoning that the text of section 6532(c) which provides that "no suit or proceeding . . . shall be begun" after a deadline was not unusually emphatic such that it would preclude equitable tolling).

The 90-day deadline is purely a procedural limitation on filing a petition with this Court and not tied to a taxpayer's substantive rights. That is, the application of equitable tolling would not affect the substance of a taxpayer's claim, merely their ability to bring the claim. *See Big Horn Coal Co. v. Sadler*, 924 F.3d 1317, 1324 (10th Cir. 2019) (noting that the application of equitable tolling would not affect the substance of a claim under the Black Lung Benefit Act, which favors application of equitable tolling); *cf. Brockamp*, 519 U.S. at 352 (noting that substantive limitations on the amount of recovery tied to the deadline indicated that equitable tolling does not apply).

Respondent points to restrictions on assessment and collection in section 7436(d)(1) that are tied to the 90-day deadline as an indication that Congress did not intend equitable tolling to apply. These provisions provide that the IRS cannot assess, collect, or take other specified administrative actions until the 90-day deadline has expired. § 7436(d)(1). These restrictions relate not to a taxpayer's substantive rights, but rather to the procedural steps the IRS employs to collect a deficiency. We find nothing inconsistent with permitting equitable tolling in relation to the filing deadline to hear a taxpayer's case and allowing the IRS to proceed with assessment and collection after the 90-day deadline has expired.

Nor do we find the text of section 7436(b)(2) highly detailed or technical such that an implicit exception could not be read into the text. The 90-day deadline is not repeated multiple times like the deadline in

*Brockamp*, 519 U.S. at 350–51 ("[Section] 6511 reiterates its limitations several times in several different ways."). The wording used in section 7436(b)(2) to establish the deadline is simple and sets forth one exception: The deadline is not applicable when the Secretary makes a determination not memorialized in a notice. § 7436(b)(2); *SECC Corp.*, 142 T.C. at 231–36.[5] This single exception is a far cry from the highly detailed text with six exceptions in section 6511 that the Supreme Court examined in *Brockamp*, 519 U.S. at 351–52. Rather, the exception in section 7436(b)(2) is more akin to the singular exception in *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501, which the Supreme Court found did not preclude reading an additional equitable tolling exception into the statute. Further, there is no text in the statute that specifically confines the exceptions to the deadline to those expressly enumerated. *See Arellano*, 143 S. Ct. at 548 (reasoning that Congress intended a statutory deadline to not be subject to equitable tolling when the statute stated that "[u]nless specifically provided otherwise in this chapter" the deadline would apply (quoting 38 U.S.C. § 5110(a)(1))).

Finally, permitting equitable tolling will not significantly increase the administrative burden on this Court. Very few petitions are filed annually with the Court for redetermination of employment status under section 7436.[6] The handful of petitions the Court receives annually under section 7436 pales in comparison to the "90 million" refund claims the IRS processes annually. *See Brockamp*, 519 U.S.

---

[5] Under section 7436(d), "[t]he principles of subsection[] (a) . . . of section 6213 . . . shall apply to proceedings brought under this section in the same manner as if the Secretary's determination described in subsection (a) were a notice of deficiency." Section 6213(a) provides an extension of the 90-day deadline to file a petition for redetermination of a deficiency to 150 days if the notice of deficiency is addressed to a person outside the United States. We have not considered whether the extended 150-day deadline is applicable in actions for redetermination of employment status via section 7436(d). *But see SECC Corp.*, 142 T.C. at 239 (holding that more specific statutory requirement in section 7436(b)(2) trumped the cross-reference to section 6213(a) with respect to the deadline to file a petition when the Commissioner makes a determination but does not mail the taxpayer a notice of employment tax determination). We need not decide whether this exception to the 90-day deadline is applicable to section 7436. Even if the 150-day deadline applies, this would be a second exception to the 90-day deadline imposed by section 7436(b)(2). Two exceptions are significantly fewer than the six exceptions that the Supreme Court considered in *Brockamp*, 519 U.S. at 351–52.

[6] In the Court's *Congressional Budget Justification, Fiscal Year 2025*, petitions filed under section 7436 were not listed on the percentage breakdown of cases heard by the Court by jurisdictional type for fiscal year 2023. U.S. Tax Court, *Congressional Budget Justification, Fiscal Year 2025*, at 18 (2024).

at 352. The number of petitions under section 7436 is even dwarfed by the number of collection due process cases, representing 5.06% of the cases filed with the Court. U.S. Tax Court, *supra*, at 18. The increased administrative burden related to these collection due process cases was insufficient to rebut the presumption in favor of equitable tolling in *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1501. It therefore follows that the increased administrative burden related to the consideration of equitable tolling for the small number of section 7436 cases filed annually—even fewer of which are filed after the 90-day deadline—is insufficient to rebut the presumption in favor of equitable tolling.

Given these considerations, we find that the presumption in favor of equitable tolling is not rebutted. Therefore, the 90-day deadline, like most other claim processing rules, can be equitably tolled.

III.    *Equitable Tolling Applied*

Now that we have determined that the 90-day deadline in section 7436(b)(2) is subject to equitable tolling, we must determine whether equitable tolling applies to this case. To be entitled to equitable tolling, a taxpayer must establish (1) that it pursued its rights diligently and (2) that extraordinary circumstances outside of its control prevented it from filing on time. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016). The first prong of the test requires that a litigant take all reasonable steps to ensure the timeliness of its petition, including engaging with its attorney to ensure a petition is timely filed. *See Holland v. Florida*, 560 U.S. 631, 653 (2010); *Hogan v. Dep't of Veterans Affs.*, 121 F.4th 172, 178 (11th Cir. 2024); *Thomas v. Florida*, 795 F.3d 1286, 1291 (11th Cir. 2015). The second prong of the test "is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." *See Menominee Indian Tribe of Wis.*, 577 U.S. at 257. Equitable tolling is applied sparingly. *Irwin*, 498 U.S. at 96.

Petitioner argues that the petition was not timely filed because its attorney's legal staff selected the wrong postal service for delivering the petition. The staff chose FedEx Express Saver, whereas the attorney states that he would have selected FedEx Priority Overnight. Section 7502(a) treats a petition that arrives at the Court after a deadline as timely if the taxpayer delivered the petition to the U.S. Postal Service on or before the due date. Section 7502(f) expands this rule to certain private delivery services "if such service is designated by the Secretary." In I.R.S. Notice 2016-30, 2016-18 I.R.B. 676, the IRS lists all private

delivery services that have been designated by the Secretary. This list includes FedEx Priority Overnight but does not include FedEx Express Saver. *See id.* If the petition had been sent via FedEx Priority Overnight, it would have been timely under the timely mailed, timely filed rule of section 7502. Essentially, petitioner argues that its failure to timely file resulted from attorney error.

We start our analysis by noting that petitioner did not allege any facts in its objection that indicate that it diligently pursued its rights. There is no indication that petitioner followed up with its attorney to ensure the attorney timely filed the petition. *Cf. Holland*, 560 U.S. at 653–54 (holding that a litigant diligently pursued his claim when he followed up multiple times with his attorney to ensure the petition was timely filed). Failure to satisfy the first prong is sufficient for us to deny petitioner's equitable tolling claim. *See Menominee Indian Tribe of Wis.*, 577 U.S. at 256 (holding that failure to meet one element of the equitable tolling test is sufficient for the Court to deny equitable tolling).

Likewise, petitioner does not satisfy the second element of the equitable tolling test: that extraordinary circumstances outside of its control prevented it from filing on time. *See id.* at 256–57. Petitioner alleges that the extraordinary circumstance warranting equitable tolling is the negligence of his attorney (or the attorney's legal staff) in mailing the petition using a nondesignated private delivery service that failed to trigger the timely mailed, timely filed rule under section 7502.

It is well established that generally a client bears the risk of his attorney's negligence, and simple negligence on an attorney's behalf will not warrant equitable tolling. *See Irwin*, 498 U.S. at 96 (holding that failure to timely file due to an attorney's absence when a notice was received is "garden variety" negligence that does not warrant equitable tolling); *see also Maples v. Thomas*, 565 U.S. 266, 280–81 (2012) ("[T]he attorney is the [client]'s agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." (quoting *Coleman v. Thompson*, 501 U.S. 722, 754 (1991))). Mere "garden variety" negligence will not warrant equitable tolling. *Irwin*, 498 U.S. at 96. However, in rare instances, an attorney's negligence may rise to a level warranting equitable tolling, such as when an attorney abandons his client. *See Holland*, 560 U.S. at 652 (stating that actions "far more than 'garden variety' or 'excusable neglect'" warrant equitable tolling).

Courts have consistently held that failure to properly mail a petition is garden variety negligence that does not warrant equitable tolling. *See Robinson v. DHS*, 71 F.4th 51, 59 (D.C. Cir. 2023) (holding that equitable tolling was not warranted when a litigant mailed a complaint by standard mail four days before the statutory deadline and it did not arrive until one day after the deadline); *Talamantes-Penalver v. INS*, 51 F.3d 133, 136 (8th Cir. 1995) (finding that equitable tolling was not warranted when an attorney mailed a notice of appeal three days before the deadline that was not received until after the deadline because the appellant "could have filed her notice of appeal by using [U.S.] Postal Service Express Mail or any number of commercial services that guarantee overnight delivery" but "assumed the risk of regular mail delivery; the method by which a notice of appeal is sent is entirely within the control of the appellant"); *Chitlik v. HHS*, No. 22-1790v, 2024 WL 5346731, at *5 (Fed. Cl. Dec. 19, 2024) (holding that equitable tolling was not warranted when a litigant failed to choose a delivery service that would guarantee delivery before the deadline).

While we appreciate petitioner's attorney's candor and effort to resolve an honest mistake from his staff, this effort does not open the door to equitable tolling. Instead, its attorney's legal staff's error in selecting a nondesignated private delivery service for mailing the petition is garden variety neglect that does not rise to a level of warranting equitable tolling. Accordingly, we will grant respondent's motion and dismiss this case for failure to state a claim upon which relief can be granted.

To reflect the foregoing,

*An appropriate order and decision will be entered.*